J. S42035/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NELSON LUIS RUIZ MARTINEZ, | : | No. 1937 MDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, November 28, 2016,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0004920-2015

BEFORE:  OLSON, J., MOULTON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 15, 2017**

Nelson Luis Ruiz Martinez appeals *pro se* from the November 28, 2016 order denying his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Contemporaneously with this appeal, PCRA counsel has requested leave to withdraw in accordance with *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). After careful review, we grant PCRA counsel leave to withdraw and affirm the order of the PCRA court.

The relevant facts and procedural history of this case are as follows. On April 1, 2016, appellant pled guilty to one count of burglary[1] and was

---

[1] 18 Pa.C.S.A. § 3502.

sentenced to 10 to 20 years' imprisonment on May 2, 2016.[2] At all relevant times during his guilty plea and sentencing, appellant was represented by Erin Thompson, Esq. (hereinafter, "Attorney Thompson"). Appellant did not file a direct appeal. On June 3, 2016, appellant filed a **pro se** PCRA petition and the PCRA court appointed Christopher Moore, Esq. (hereinafter, "counsel" or "PCRA counsel") to represent appellant shortly thereafter. Following several continuances, the PCRA court conducted an evidentiary hearing on appellant's petition on November 28, 2016. The PCRA court summarized the testimony adduced at this hearing as follows:

> [] Appellant testified during the PCRA hearing. During his testimony, [a]ppellant clarified that he was alleging in his petition that Attorney Thompson was ineffective and that he would have withdrawn his guilty plea if he had been informed about the mandatory sentence. Appellant testified that Attorney Thompson had advised [a]ppellant of the mandatory sentence that was filed by the Commonwealth after [a]ppellant had pled guilty but before sentencing and did not advise him that he could withdraw the guilty plea before sentencing.
>
> On cross-examination, [a]ppellant admitted that [he] had filled out a guilty plea colloquy prior to sentencing, where he initialed each page and indicated that he completed it on March 30, 2016. Appellant said he did not review the colloquy on the day of sentencing. Appellant admitted that on page 7 of the colloquy, it is stated that the maximum

---

[2] The record reflects that appellant's offense gravity score in this case was 9 and his prior record score was REVOC. Thus, the standard range under the Pennsylvania Sentencing Guidelines and mandatory range were both 10 to 20 years' imprisonment, a difference that the PCRA court and PCRA counsel characterized as "academic." (**See** notes of testimony, 11/28/16 at 2, 27-28; PCRA court opinion, 1/17/17 at 8.)

term of confinement is twenty years. Further, [a]ppellant agreed that the original offer was ten to twenty years and that he was sentenced to ten to twenty years.

Then, the Commonwealth called [Attorney Thompson]. Around September 16, 2015, Attorney Thompson discussed with [a]ppellant his prior record score and told him that that [sic] he may be sentenced to a ten to twenty year standard range sentence for the burglary, and she stated that [a]ppellant was very unhappy about that and told her why he did not like that sentence. During that meeting, Attorney Thompson mentioned to [a]ppellant that because [he] had prior crimes of violence and is a REVOC, the Commonwealth could seek a mandatory sentence. However, Attorney Thompson does not believe that she mentioned the possibility of a mandatory sentence when they were later discussing the open plea. During her testimony, Attorney Thompson stated that she had communicated an offer made by the Commonwealth of ten to twenty years to [a]ppellant.

Prior to pleading guilty, Attorney Thompson had explained the difference between an open and negotiated plea with the [a]ppellant. Attorney Thompson discussed with [a]ppellant that if the charges were consecutive, she told [a]ppellant that it was in his best interest to plea[d] rather than have a trial. Attorney Thompson also indicated that she had met with [a]ppellant on March 30, 2016 to complete the guilty plea colloquy and to discuss the guilty plea. She stated that "when I have clients complete colloquies beforehand at the prison, I always give them the colloquy to review in court before their plea so if they have any last minute questions, they can be addressed before entering the plea," and she noted that they reviewed the colloquy on April 1, 2016 as well.

Appellant pled guilty on April 1, 2016 to the burglary count, and it was an open plea. At no point did [a]ppellant tell Attorney Thompson that "[he] did

not understand the nature of the proceedings or any rights he was giving up by pleading guilty." At no point did he indicate that the plea was not voluntary, although he did express how unhappy he was about pleading and that he did not want to be imprisoned for ten to twenty years.

Attorney Thompson also stated that it was [a]ppellant's choice whether to plea[d] or go to trial, and, if he wanted a trial, they would not have completed the colloquy or done the guilty plea. [Appellant] was also colloquied on the record by th[e] Court about any rights that he'd be giving up by pleading guilty.

On April 27, [2016,] before sentencing, Attorney Thompson met with [a]ppellant advising him that the Commonwealth was seeking the mandatory, that it was her error, and that "his options would be to see if they would withdraw the mandatory, possibly withdraw his guilty plea, or argue that [she] was ineffective now and try to get him a new attorney who may be able to convince the Commonwealth to not seek the mandatory given the new counsel."

Appellant did not ask Attorney Thompson to withdraw the guilty plea.

PCRA court opinion, 1/17/17 at 4-7 (footnotes and citations to notes of testimony omitted; internal quotation marks in original).

Following the hearing, the PCRA court entered an order on November 28, 2016 denying appellant's petition. On November 29, 2016, appellant filed a timely notice of appeal. On December 5, 2016, the trial court entered an order directing appellant to file a Pa.R.A.P. 1925(b) statement within 21 days. Appellant complied with the trial court's order and filed a timely Rule 1925(b) statement on December 16, 2016.

Thereafter, on January 17, 2017, the trial court filed its Rule 1925(a) opinion.

On March 14, 2017, counsel subsequently filed a "no-merit" letter and a petition to withdraw, in accordance with **Turner**/**Finley**. Thereafter, on March 22, 2017, this court issued a **per curiam** order granting appellant permission to file a response to counsel's petition, either **pro se** or through privately retained counsel, within 30 days. On March 30, 2017, appellant filed a **pro se** response to counsel's request to withdraw, requesting a continuance so that he could retain new counsel and retain his appellate rights. Thereafter, on April 18, 2017, appellant indicated that he would be proceeding **pro se** and filed a motion for an extension of time to file his response to counsel's withdrawal petition. On April 21, 2017, this court granted appellant's request, and appellant filed his **pro se** response brief on May 17, 2017.

Counsel raises the following issue on appellant's behalf: "Whether the [PCRA] Court abused its discretion in denying [a]ppellant's PCRA Petition and Relief Requested?" (**Turner**/**Finley** letter brief at 1.) Appellant, in turn, argues that Attorney Thompson rendered ineffective assistance in failing to move to withdraw his guilty plea on the basis that it was involuntary. (Appellant's response brief at 2.) In support of this claim, appellant highlights the fact that he does not speak or understand English and that this language barrier precluded his ability to effectively

communicate with Attorney Thompson, particularly in the absence of an interpreter. (*Id.* at 3.)[3]

Prior to considering appellant's arguments, we must address PCRA counsel's "no-merit" letter and petition to withdraw from representation. *See Commonwealth v. Daniels*, 947 A.2d 795, 798 (Pa.Super. 2008). In *Commonwealth v. Muzzy*, 141 A.3d 509 (Pa.Super. 2016), a panel of this court recently reiterated the procedure to be followed when PCRA counsel files a "no-merit" letter and seeks permission to withdraw from representation:

> Counsel petitioning to withdraw from PCRA representation must proceed . . . under [*Turner*/*Finley*] and . . . must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> . . . .
>
> Where counsel submits a petition and no[ ]merit letter that . . . satisfy the

---

[3] The record reflects that neither counsel's *Turner*/*Finley* letter brief nor appellant's *pro se* response brief contain pagination; however, for the ease of our discussion, we have assigned each page a corresponding number.

> technical demands of ***Turner***/***Finley***, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

***Id.*** at 510-511 (some bracketed internal citations amended; case citations omitted).

Herein, we find that counsel's filing with this court complied with the requirements of ***Turner***/***Finley***. Specifically, counsel's "no-merit" letter detailed the nature and extent of counsel's review. In preparing the "no-merit" letter, counsel addressed the issues appellant raised in his PCRA petition and determined that they lack merit. Thereafter, counsel provided a discussion of appellant's claim, explaining why the issue is without merit. Finally, the record reflects that counsel served appellant a copy of the "no-merit" letter and advised appellant of his right to proceed ***pro se*** or with the assistance of privately retained counsel. Thus, we find that counsel's request for leave to withdraw from representation satisfied the requirements of ***Turner***/***Finley***. ***See Commonwealth v. Karanicolas***, 836 A.2d 940, 947 (Pa.Super. 2003) (stating that substantial compliance with requirements will satisfy the ***Turner***/***Finley*** criteria). We must now conduct our own review of the record and render a decision as to whether the appeal is without merit.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." **Commonwealth v. Patterson**, 143 A.3d 394, 397 (Pa.Super. 2016) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

In **Commonwealth v. Lynch**, 820 A.2d 728 (Pa.Super. 2003), **appeal denied**, 835 A.2d 709 (Pa. 2003), we explained that the PCRA will provide relief to an appellant if ineffective assistance of counsel caused him to enter an unknowing and involuntary guilty plea. We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under Section 9543(a)(2)(ii) of the PCRA. **See Lynch**, 820 A.2d at 732. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish the following three factors: "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014) (citation omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009) (citations and internal quotation marks omitted).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (citation omitted). Additionally, we note that counsel cannot be found ineffective for failing to raise a claim that is devoid of merit. *See*, *e.g.*, *Commonwealth v. Ligons*, 971 A.2d 1125, 1146 (Pa. 2009).

This court has long recognized that "[a] criminal defendant has the right to effective counsel during a plea process as well as during trial." *Patterson*, 143 A.3d at 397 (citation omitted). "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[; a]ll that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily, and intelligently made." *Commonwealth v. Diaz*,

913 A.2d 871, 873 (Pa.Super. 2006) (citation and internal quotation marks omitted), *appeal denied*, 931 A.2d 656 (Pa. 2007).

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa.Super. 2013) (citation omitted).

In order to ensure a voluntary, knowing, and intelligent plea, trial courts are required to ask the following questions in the guilty plea colloquy:

> (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea.

*Commonwealth v. Kpou*, 153 A.3d 1020, 1023 (Pa.Super. 2016) (citation omitted); *see also* Pa.R.Crim.P. 590. "Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise." *Kpou*, 153 A.3d at 1024 (citation omitted). Lastly, we note that,

> after the court has imposed a sentence, a defendant can withdraw his guilty plea only where necessary to correct a manifest injustice. [P]ost-sentence motions for withdrawal are subject to higher scrutiny

> since courts strive to discourage the entry of guilty pleas as sentencing-testing devices.
>
> . . . .
>
> To be valid [under the "manifest injustice" standard], a guilty plea must be knowingly, voluntarily and intelligently entered. [A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly.

*Id.* at 1023 (internal citations and quotation marks omitted).

The record reflects that on March 30, 2016, appellant executed a 12-page written guilty plea colloquy that was translated in both English and Spanish. Appellant acknowledged in this written guilty plea colloquy that he understood he was pleading guilty to burglary and that Attorney Thompson had explained the elements of this crime to him. (Guilty plea colloquy, 3/30/16 at 4, ¶¶ 15-16.) The written guilty plea colloquy also explained to appellant, *inter alia*, the permissible range of sentences and the fact that he could be sentenced to a mandatory term of 10 to 20 years' imprisonment for the burglary charge. (*Id.* at 7-8, ¶ 25.) Appellant acknowledged in the written guilty plea colloquy that no promises or representations were made to him with regard to his guilty plea or sentence. (*Id.* at 8-9, ¶¶ 29, 34.) Additionally, appellant indicated that he was satisfied with Attorney Thompson's representation. (*Id.* at 11, ¶ 42.)

Thereafter, on April 1, 2016, the trial court conducted an on-the-record colloquy, as mandated by Rule 590. The transcript of the guilty plea colloquy demonstrates that the trial court inquired at great length

with regard to appellant's decision to plead guilty, and a court interpreter was present at this hearing. Appellant indicated during this hearing that he can read Spanish and understood all the questions in the written plea colloquy. (Notes of testimony, 4/1/16 at 4.) Appellant further reiterated that he reviewed the written plea colloquy with Attorney Thompson prior to signing it and was satisfied with her representation, specifically noting that, "the lawyer explained everything to me." (**Id.** at 14.) Appellant also acknowledged that he had understood the explanation of his trial and appellate rights. (**Id.** at 6-9.)

With respect to the imposition of sentence, appellant again indicated that he understood the trial court could impose a sentence of 10 to 20 years' imprisonment for the crime of burglary, a felony of the first-degree. Specifically, the following exchange took place during the plea hearing:

> THE COURT: Do you understand that in this case it's a felony, the Court may impose the sentence in accordance with the sentencing guidelines established by the legislature, the Commonwealth of Pennsylvania, that places a suggested length of sentence for the type of crimes and increase[s] that length of sentence if the person has been previously convicted of other crimes, either as a juvenile or as an adult, and that the maximum sentence of confinement or fine or fines applicable to crimes to which you are pleading is as follows:
>
> In this case the burglary would carry with it a maximum sentence of 20 years, the theft would carry with it a maximum sentence of seven years, fines in the amount of [$]25,000 and [$]10,000 respectively for a total of 27 years in jail. Those

> sentences could be consecutive, added to each other. Do you understand that?
>
> [APPELLANT]: (No Response)
>
> THE COURT: So the total sentence you could get would be 27 years and a $35,000 fine, do you understand that?
>
> [APPELLANT]: Yes.
>
> ATTORNEY THOMPSON: Your Honor, if I may, just to be clear? I think why [appellant] is hesitating, he only pled to the burglary, so the maximum would be the 20, $25,000.
>
> THE COURT: I'm going to adjust that. I guess you filled that out before --
>
> ATTORNEY THOMPSON: I did, Your Honor.
>
> THE COURT: -- we withdrew the theft charge. . . .

*Id.* at 9-10. Thereafter, appellant informed the trial court that he was pleading guilty of his own free will, that he understood the consequence of entering a guilty plea, and that no one had promised him anything in exchange for entering this plea. (*Id.* at 11-12.)

Upon review, it is apparent that appellant understood that if he pled guilty to burglary, he could be sentenced to 10 to 20 years' imprisonment. To the extent that appellant contends that the statements he made during his written and oral guilty plea colloquies were untrue or were a result of Attorney Thompson's purported ineffectiveness, we note that this argument is not legally permissible to show an involuntary plea. *See Commonwealth v. Turetsky*, 925 A.2d 876, 881 (Pa.Super. 2007) (stating, "[a] person who

elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." (citation omitted)), ***appeal denied***, 940 A.2d 365 (Pa. 2007). Moreover, it is well settled that disappointment in the sentence actually imposed does not represent a manifest injustice. ***Commonwealth v. Muhammad***, 794 A.2d 378, 383 (Pa.Super. 2002) (citation omitted). Based on the foregoing, we find that appellant failed to demonstrate a "manifest injustice" in this instance and knowingly, voluntarily, and intelligently entered his guilty plea. ***See Kpou***, 153 A.3d at 1023. Attorney Thompson, therefore, was not ineffective in failing to move to withdraw said plea on this basis.

Accordingly, we affirm the November 28, 2016 order of the PCRA court and grant PCRA counsel's petition for leave to withdraw as counsel.

Order affirmed. Petition for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2017

- 14 -